POSTED ON WEB SITE

**FILED**

JUL 1 5 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                                         )   Case No. 05-11849-B-7
                                                              )
Gilbert D. Ramirez and                                        )   DC No. UST-1
Joyce M. Ramirez,                                             )
                                                              )
            Debtors.                                          )
                                                              )

**MEMORANDUM DECISION RE UNITED STATES TRUSTEE'S
MOTION FOR DISMISSAL PURSUANT TO 11 U.S.C. § 707(b)**

Jeffrey J. Lodge, Esq., Office of the United States Trustee appeared for Sara L. Kistler, United States Trustee ("UST").

David R. Jenkins, Esq., appeared for respondent, Gilbert D. Ramirez and Joyce M. Ramirez (the "Debtors").

The United States Trustee's Motion for Dismissal Pursuant to 11 U.S.C. § 707(b) (the "Motion") was heard on July 13, 2005. The court has jurisdiction over this matter pursuant to 28 U.S.C. section 1334 and 11 U.S.C. section 707. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(a). This Memorandum contains the court's findings of fact and conclusions of law. For the reasons set forth below, the court is not persuaded that the granting of a discharge in this case will be a substantial abuse of chapter 7. Accordingly, the United States Trustee's Motion will be DENIED.

**Applicable Law.**

Section 707(b) of the Bankruptcy Code provides for dismissal of a chapter 7 case in pertinent part as follows:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. *There shall be a presumption in favor of granting the relief requested by the debtor.* . . . (emphasis added.)

In order to dismiss a case pursuant to section 707(b), a court must find that the debts are "primarily consumer debts" and that the granting of relief to the debtor, a chapter 7 discharge

would be a "substantial abuse" of chapter 7. *Zolg v. Kelly III (In re Kelly)*, 841 F.2d 908, 913-14 (9th Cir. 1988).

Section 101(8) of the Bankruptcy Code defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose." While the Bankruptcy Code does not define the term "primarily consumer debt," the United States Court of Appeals for the Ninth Circuit has held that the "primarily" standard is met when more than half of the dollar amount owed, including the home mortgage, is consumer debt. *Id.* at 913.

Similarly, the Bankruptcy Code does not define the term "substantial abuse." Nor have the courts prescribed a clear standard for making the "substantial abuse" analysis. The Ninth Circuit has held that a debtor's ability to pay his debts when due, as determined by his ability to fund a chapter 13 plan, is the *primary factor* to be considered in the "substantial abuse" analysis. *Id.* at 914. "[A] finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse." *Id.* at 915. However, the "ability to pay debts" test is not the end of the inquiry. *Kelly* did not establish an absolute *per se* rule. *Price v. United States Trustee (In re Price)*, 353 F.3d 1135, 1140 (9th Cir. 2004). Based on the language of § 707(b) and the legislative history, the Ninth Circuit subsequently recognized that, "the debtor's ability to pay his or her debts does not *compel* a section 707(b) dismissal of the petition as a matter of law." *Id.*

"Congress committed the question of what constitutes substantial abuse to the discretion of bankruptcy judges within the context of the Code." *Id.* The Bankruptcy Code specifically uses the term "substantial" to qualify the term "abuse" which suggests that dismissal under section 707(b) requires more than a simple balancing of the equities. While the "ability to fund" a hypothetical chapter 13 plan may support a finding of substantial abuse, the Ninth Circuit's use of the term "primary factor" in *Kelly* suggests that the "ability to fund" a chapter 13 plan is not the only factor to be considered. The court in *Kelly* also cited legislative history which recognized that "'if a debtor can meet his debts *without difficulty* as they come due, use of Chapter 7 would represent a substantial abuse.'" (emphasis added.) Kelly, 841 F.2d at 914 (*citing* S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983)). The terms "substantial," and "without difficulty" both suggest that other factors should be considered by the court in the exercise of its

discretion. Those concepts are each subject to numerous considerations.

Recognizing the need for flexibility, the Ninth Circuit employed a "totality-of-the-circumstances" analysis in *Price*, which looks to factors such as,

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;

(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;

(4) Whether the debtor's proposed family budget is excessive or extravagant;

(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

*Price*, 353 F.3d at 1139-40.

Based on the foregoing, this court will apply a totality-of-the-circumstances analysis to the UST's Motion giving primary consideration to the Debtors' ability to fund a chapter 13 plan. In other words, the court must determine that the *total picture* is substantially abusive.

**Burden of Proof.**

The Ninth Circuit does not address the burden of proof in *Kelly*; however, it does refer to the chapter 13 "Disposable Income Test" under 11 U.S.C. § 1325 as the "primary factor" of a substantial abuse analysis. To confirm a chapter 13 plan, the debtor has the burden of proving that all of the requirements of section 1325 have been met. *Amfac Distribution Corp. v. Wolff (In re Wolff)*, 22 B.R. 510, 512 (9th Cir. BAP 1982): *See also Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349 (9th Cir. BAP 1997). However, section 707(b) is clear that there shall be a presumption in favor of granting the debtor a discharge.

> [T]he presumption is in reality a caution and a reminder to the bankruptcy court that the Code and Congress favor the granting of bankruptcy relief, and that accordingly "the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present."

*Kelly* 841 F.2d at 917, *citing* 4 Collier § 707.08, at 707-19.

The presumption may be overcome by a showing that the debtor has the ability to repay

3

debts or the presence of other factors indicating dishonesty or lack of need. *In re Mastromarino*, 197 B.R. 171, 177 (Bankr. D.Me. 1996). The presumption vanishes entirely upon a showing that the debtor's schedules do not accurately portray the debtor's ability to pay. The matter then becomes an ordinary question of fact. *Id.*

The burden of proof and burden of production in a motion to dismiss for substantial abuse rests with the moving party. *6 Collier on Bankruptcy* (15 Ed. Revised.) ¶ 707.04 [5][a], pg. 707-26). Unlike the chapter 13 plan confirmation process, a chapter 7 debtor is not required to prove that his/her discharge meets any statutory standard. The UST has the burden of producing evidence to support a section 707(b) motion. *Harris v. U.S. Trustee (In re Harris)*, 279 B.R. 254, 260-61 (9th Cir. BAP 2002). Even when the debtors fail to oppose the 707(b) motion, they still retain the benefit of the statutory presumption in favor of their discharge and the court must independently review the evidence presented to determine if that presumption has been sufficiently rebutted.

**Analysis.**

**The Debts are "Primarily Consumer Debts."**

The first element of the 707(b) analysis appears to have been satisfied and the Debtors do not contend otherwise. The front page of the Debtors' petition states that their debts are "Consumer/Non-Business." The Debtors have no outside business activity. The scheduled secured debts relate to consumer purchases. The scheduled unsecured obligations appear to be based on personal credit cards and other consumer debts. Since more than half of the dollar amount owed is consumer debt, the Debtors have "primarily consumer debts" within the meaning of section 707(b).

**The UST Has Not Established That the Chapter 7 Discharge Would Be a Substantial Abuse.**

The UST argues that the Debtors have the ability to pay between 66% to 77% of their unsecured claims through a 36 month chapter 13 plan. The problem with the UST's analysis lies in the fact that the UST's calculations, indeed the UST's entire "substantial abuse" argument, are based on the inclusion of supplemental income which Mr. and Mrs. Ramirez receive from a

substantial number of overtime hours and a second job. Mr. Ramirez is employed as a telephone installer for SBC. The UST offered into evidence a copy of his Statement of Earnings through March 5, 2005. That document shows that Mr. Ramirez earns a "base" pay of $26.7875 per hour. On a monthly basis, his "base" pay is therefore approximately $4,715 ($26.7875 x 8 hours x 22 days).[1]

     The Debtors have committed to raising 10 adopted children. Eight of their children still live at home for which they receive a nominal monthly support award of $2,400. Mrs. Ramirez earns $728 per month as a teaching aid at a local elementary school. It is not clear whether this second income is full time or seasonal (based on the school year). However, without Mr. Ramirez's overtime and "premium" pay, the gross income for this family of ten is approximately $7,843. After payroll deductions (set forth in Schedule I) for taxes, social security, insurance and union dues (totaling $1,411), this family has a net monthly income of approximately $6,432. The Debtors report monthly expenses (Schedule J) of $7,261 which the UST does not dispute. This leaves a "base" disposable income of *minus* $829 per month. Mr. Ramirez has been working overtime to make up this difference, in addition to payments for his 401(k) Plan and the U.S. Savings Bonds which the UST objects to. Even if the court's calculations are off by a few hundred dollars, it is clear that these Debtors still have much to do to get their financial affairs in order. Without substantial overtime income and Mrs. Ramirez's second income, these Debtors have no "disposable income" to fund a chapter 13 plan.

     These Debtors have been trying to pay their creditors and get their finances in order despite a declining gross income. The UST offered into evidence the transcript of the Debtors' meeting of creditors. Mr. Ramirez testified at that meeting,

> "I was trying to work as much as I could possibly get to keep up with the demand of the bills - - but I was killing myself. . . . [M]y income last year was so much more than its going to be this year. Because they already told us our pace is going to cut down."

---

[1] The Statement of Earnings shows that Mr. Ramirez's gross monthly pay through March 5, 2005, is approximately $9,290. The difference between the gross and the base pay is largely attributable to overtime and "premium" hours worked during the same time period.

5

In response to the UST's Motion, Mr. Ramirez declared,

> 4. I have re-financed my house on three (3) previous occasions to pay my outstanding bills. My house payment is now $2,037.00 per month as a result of said re-financing.
>
> 5. My gross income through June 11, 2005 is $37,852.89 . . . .
>
> 6. In May 2005, my take home was pay $3,197.00; my wife's was approximately $545.00; and we received adoption assistance of $2,400. No other monies were received by us. Said total is $6,142.00. I have put in a request to stop my 401k Plan, U.S. Savings Bond, and United Way Fund deductions. But even with these cuts, we will still be short of income for family necessities. . . . We are living paycheck to paycheck to take care of our family of ten.

The UST bases her argument on the Debtors' "historical" income, but that factor alone does not define the "total circumstances" upon which the court must base its decision. Implicit in the UST's argument is the assumption (conclusion) that the Debtors will (must) continue to earn the same income for the time (36 months) it will take to complete a chapter 13 plan. The UST cites no authority for the proposition that Mr. Ramirez could or should be compelled to work substantial overtime hours for the next three years. The availability of overtime is not within Mr. Ramirez's control. Neither does the UST cite any authority for the proposition that Mrs. Ramirez, a mother of eight children still at home, could or should be compelled to continue working her second job with the school district. Again, the availability of that work is not within Mrs. Ramirez's control.

The UST makes no showing, nor does she argue, that these Debtors have been, or hereafter will be living an extravagant lifestyle at the expense of their creditors. She does not contend that they have done anything else (such as "load up" their prepetition debts), which could be viewed as an abuse of their creditors. The UST has not made an adequate showing that unsecured creditors would actually receive anything if this case were converted to or re-filed as a chapter 13. Even with their "fresh start," this family still has an "uphill battle" to get their income and expenses aligned. Any creditor that feels that it has been abused by these Debtors is free to not extend any further credit to them. Dismissal of this case, in the court's view, would serve no beneficial purpose.

**Conclusion.**

Based thereon, and considering the totality-of-the-circumstances, the court is not persuaded that the discharge of these Debtors in chapter 7 will be a substantial abuse. Accordingly, the United States Trustee's Motion for Dismissal Pursuant to 11 U.S.C. § 707(b) will be DENIED.

Dated: July __15__, 2005

W. Richard Lee
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

    The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

See Attached

DATED: JUL 22 2005    By: /s/ Monson
                                   Deputy Clerk

EDC 3-070 (New 4/21/00)

Robert Hawkins
1849 N Helm #110
Fresno, CA 93727

Joyce Ramirez
1521 CHELSEA WAY
PORTERVILLE, CA 93257

Gilbert Ramirez
1521 CHELSEA WAY
PORTERVILLE, CA 93257

Hal Havlisch
191 W Shaw #102
Fresno, CA 93704

Office of the US Trustee
1130 O St, Room 1110
Fresno, CA 93721